Harry CROWDER, Appellant,

v.

COMMONWEALTH of Kentucky, ex rel., Patsy GREGORY (now Sevier), Appellee.

No. 86-CA-1309-DG.

Court of Appeals of Kentucky.

Feb. 19, 1988.

Robert E. Blau, Jolly and Blau, Newport, for appellant.

Justin D. Verst, Asst. Campbell Co. Atty., Newport, for appellee.

Before HOWERTON, C.J., and COMBS and McDONALD, JJ.

COMBS, Judge.

This appeal concerns a paternity action which originated in the Campbell District Court. That court overruled appellant's motion to vacate or set aside a default judgment declaring him to be the natural father of H.G. Appellant appealed to the Campbell Circuit Court and that court affirmed the district court. We granted appellant's motion for discretionary review, and now reverse.

The paternity complaint against Crowder was filed on September 21, 1978, by the Commonwealth of Kentucky on behalf of H.G.'s mother, Patsy Gregory. Crowder was duly served, but lost the summons and complaint. He assumed that he would receive additional notice. The Commonwealth moved for default judgment, and apparently served Crowder with notice of the motion. Default judgment against Crowder was entered on September 7, 1979.

Crowder then retained an attorney and sought to have the default judgment set aside upon grounds of mistake, inadvertence, and excusable neglect. CR 55.02, 60.02(a). He was unsuccessful.

The years of 1980 through 1985 were rife with motions to hold Crowder in contempt, his denials of paternity, continuances, and agreed orders for support of H.G.

In October of 1985, Crowder learned of information that eventually led to this appeal. Kenny Sevier was married to Patsy Gregory from December, 1979 to April or May of 1980. Sevier informed Crowder that his ex-wife had told him during their brief marriage that she knew Crowder was not H.G.'s biological father, and that she had used her pregnancy and the paternity proceedings in an effort to regain Crowder's affection. Sevier signed an affidavit that Patsy Gregory Sevier had made these statements.

On the basis of this new information, Crowder moved the court for relief from the final judgment pursuant to CR 60.02. He further moved the court to order him, the mother, and the child to submit to blood tests. The court granted the motion for testing, and the three were sent for Human Leukocyte Antigen (HLA) tissue typing. The results unequivocally excluded Crowder as the father of H.G.

Crowder then moved the court for relief from the judgment pursuant to CR 60.02(e), (f). The court overruled the motion. Crowder then moved the court to alter, amend, or vacate its order. CR 59.05. This motion was also overruled. Crowder at that time also moved the court to abate all future support obligations from him to H.G. The court granted that motion.

Crowder appealed, and the Commonwealth cross-appealed. The Campbell Circuit Court affirmed. Crowder now appeals to this court to reverse the final order refusing his requested relief from judgment pursuant to 60.02(e), (f). The Commonwealth did not cross-appeal the portion of the order abating future support.

The question presented to us on appeal is whether the district court abused its discretion by failing to set aside the default judgment.

The Commonwealth contends that under CR 60.02(e) and (f) the trial court did not abuse its discretion by refusing to relieve Crowder from the default judgment because Crowder failed to exercise due diligence by failing to file his motion for blood tests until six years from the entry of default judgment.

We initially observe that the admission into evidence of the HLA test results was not judicially approved until June 15, 1983, when the Kentucky Supreme Court rendered its opinion in *Perry v. Commonwealth*, Ky., 652 S.W.2d 655 (1983). By that time default judgment had already been entered against Crowder and affirmed on appeal. Any motion for blood tests, absent a showing of one of the grounds in CR 60.02 would have been improper.

When Kenny Sevier came forward with the information of the mother's admission, Crowder acquired grounds for his motion, and promptly moved the court for relief under the rule. The trial court granted Crowder's motion to the extent that HLA blood testing was ordered. We point out here that CR 60.02 allows a trial court, upon a proper showing, to relieve the moving party of its final judgment "upon such terms as are just." We believe that based upon the new evidence before the court tending to show it was no longer equitable for the judgment to have prospective application [CR 60.02(e)], the court properly exercised its discretion by ordering the blood tests.

This brings us to consider whether it was an abuse of discretion for the trial court not to set aside the judgment of paternity after the HLA blood test results unequivocally excluded him as the father of H.G.

KRS 406.111 provides in part:

### Effect of blood test results

If the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly.

The experts excluded Crowder as the father of H.G., and the court understood this as its order evinces. However, despite its finding of non-paternity, based upon the blood tests, the court did not relieve Crowder from prospective application of the judgment's resolution of the issue of paternity. The statute employs the mandatory "shall." Where the statutory diction is "shall," a court's use of discretion becomes abuse of discretion. Thus, it was an abuse of discretion not to vacate the default judgment prospectively because, if for no other reason, the courts have no discretion to exercise in these instances.

Justice is the court's constant destination, relentlessly pursued. It is not arrived at where a court in a paternity action adjudicates a man to be the father of a child while knowing full well that the biological relationship has been clearly disestablished.

That an injustice such as this, if allowed, would have great potential for proliferation is self-evident. H.G. would have a legal claim to a portion of Crowder's estate under our laws of descent and distribution, which could unjustly diminish the inheritance of Crowder's true children. H.G. could attempt to draw benefits from Crowder's social security account equally with Crowder's true children. KRS Ch. 391; *Fykes v. Clark*, Ky., 635 S.W.2d 316 (1982); *see also Hibbs v. Chandler*, Ky.App., 684 S.W.2d 310 (1985). The mother of H.G. has been receiving public assistance for his support. Yet the Commonwealth could never seek reimbursement legally due from H.G.'s father because a stranger to H.G. would be deemed his father, and he would be relieved from payment of support. It is not the least among our concerns that it would be unfair to H.G., in this case *vis a vis* an adoption, to decree a man to be his father who bears no relation to him. These are but a few of the considerations which make the continued application of the paternity judgment against Crowder unacceptable.

The order of the Campbell Circuit Court affirming the Campbell District Court is hereby reversed and remanded to the trial court for the entry of an order setting aside and vacating the default judgment of paternity.

All concur.